AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>A WHITE 2008 FORD F-150, BEARING NM<br>LICENSE PLATE: BRPX08 &<br>VIN: 1FTPW14V38FB95044 | )<br>)<br>)<br>) Case No. **24mr1074**<br>)<br>) |

**APPLICATION FOR A TRACKING WARRANT**

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
The curtilage of the property at 1338 Gonzales Rd SW, Albuquerque, NM, including the driveway, which is where the subject vehicle is regularly parked.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Gavin Hayes
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: June 4, 2024

*Judge's signature*

City and state: Albuquerque, NM

**Kirtan Khalsa United States Magistrate Judge**
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A WHITE 2008 FORD F-150, BEARING NM LICENSE PLATE: BRPX08 & VIN: 1FTPW14V38FB95044 | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A TRACKING WARRANT

I, Gavin Hayes, a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), being first duly sworn, hereby depose and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3117 for a warrant to install and monitor a tracking device on a white 2008 Ford F-150 with the license plate of New Mexico BRPX08 and a VIN of 1FTPW14V38FB95044 (hereafter, referred to as the "**SUBJECT VEHICLE**"), a vehicle which is owned and operated by Gabriel James CERVANTES. Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of violations of 21 U.S.C. § 841(a)(1), that being distribution of and possession with intent to distribute a controlled substance, and 21 U.S.C. § 846, that being conspiracy, and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2.  I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, hereafter referred to as HSI, and has been employed by HSI since

August of 2023. I am currently assigned to the HSI office in Albuquerque, NM, where I am assigned to investigate individuals involved in the trafficking of narcotics including violations of Title 21, United States Code, Section 841 and 846. I have worked narcotics investigations and have training in investigating these types of cases by the Department of Homeland Security and other governmental and non-governmental entities. During the investigation of these cases, I have participated in the execution of search warrants pertaining to these violations.

3. I have completed the Criminal Investigators Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. These training programs included topics such as constitutional law, customs and immigration law, civil and criminal forfeiture, narcotics investigations, financial investigations, physical and electronic evidence, investigative methods, and more.

4. Prior to my tenure as a Special Agent, I was a sworn law enforcement officer employed by the city of Greensboro, North Carolina. I served in that position for over 6 years, during which I was primarily assigned to the patrol bureau. My primary responsibilities were responding to 911 calls and investigating violations of criminal law. I investigated and assisted with investigating hundreds of felony and misdemeanor violent crimes, drug offenses, weapon violations, fraud offenses, impaired driving offenses, and more. I regularly established probable cause for warrantless arrests, arrest warrants, and search and seizure warrants for the aforementioned crimes.

5. My training as a Greensboro Police Officer included attending the Greensboro Police Academy, which included North Carolina's Basic Law Enforcement Training (BLET) program. Covered topics included constitutional law, criminal law, patrol duties, basic narcotics

investigations, criminal investigations, basic interviewing, communication, and mental health awareness. Since completing the Greensboro Police Academy, I was certified by the State of North Carolina as a Chemical Analyst and as a Radar Operator. I received further specialized training in the areas of Fundamentals of the Investigative Process, Death and Violent Crime Scene Management, Standardized Field Sobriety Testing, Introduction to Drugged Driving, Drones for First Responders, and Roadside Interview and Detecting Deception.

6. Prior to my tenure as a Greensboro Police Officer, I received my education at Elon University in North Carolina. I received a Bachelor of Arts with majors in Public Health Studies and Policy Studies, and minors in Leadership Studies and Criminal Justice Studies.

7. In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

   a. Information provided by Special Agents ("SA"), Criminal Analysts ("CA") of the Department of Homeland Security, and other law enforcement officials (collectively referred to as "agents"), including oral and written reports that I have received directly or indirectly from said investigators;

   b. Sources of Information (SOIs)

   c. Results of physical surveillance conducted by agents during this investigation;

   d. A review of telephone subscriber information;

   e. A review of driver's license and automobile registration records;

   f. Records from commercial databases;

   g. Records from the National Crime Information Center ("NCIC").

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

3

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will continue to be committed by Gabriel CERVANTES using the **SUBJECT VEHICLE**.

## PROBABLE CAUSE

10. A check of New Mexico Motor Vehicle Division ("MVD") records on May 23, 2024, shows that the license plate "BRPX08" belongs on a white 2008 Ford F-150 with a VIN of 1FTPW14V38FB95044. This vehicle is registered to Gabriel James CERVANTES with a date of birth of 12/9/1996. The vehicle's registered address is listed as 516 Hillview Ct NE, Albuquerque, NM 87123.

11. The United States, including HSI, is conducting a criminal investigation of CERVANTES and other known and unknown individuals involved in his Transnational Criminal Organization ("TCO") regarding possible violations of 21 U.S.C. § 841(a)(1), that being distribution of and possession with intent to distribute a controlled substance and 21 U.S.C. § 846, that being conspiracy.

12. In February 2024, HSI Special Agent ("SA") Beckford learned from New Mexico State Police ("NMSP") that CERVANTES was a known seller of fentanyl pills in Albuquerque and Santa Fe, New Mexico. NMSP advised they purchased fentanyl pills from CERVANTES on six previous occasions utilizing a NMSP undercover agent ("UCA"). A criminal history check on CERVANTES identified he was on state probation for aggravated assault with a deadly weapon. Through communication with the NMSP UCA, SA Beckford learned CERVANTES's current address is identified as 1338 Gonzales Rd., SW, Albuquerque, New Mexico.

13. On Tuesday, February 20, 2024, SA Beckford drove to CERVANTES's residence and noticed CERVANTES was walking out of the residence and throwing away trash. SA Beckford also confirmed a white Ford F-150 displaying NM "BRPX08" that was parked in the driveway was registered to CERVANTES.

14. In February 2024, the NMSP UCA communicated with CERVANTES to conduct a narcotics transaction of suspected fentanyl pills. On February 22, 2024, CERVANTES met with the UCA at an agreed upon location in Albuquerque, NM, and to sell the UCA fentanyl pills. Prior to the deal, NMSP Officer Isaiah Taylor observed a male subject exit the residence at 1338 Gonzales Rd SW and enter the SUBJECT VEHICLE. Region 3 Narcotics Task Force ("Region 3") officers followed the SUBJECT VEHICLE to the deal location. SA Beckford observed the SUBJECT VEHICLE enter the parking lot of the deal and observed that CERVANTES was driving the SUBJECT VEHICLE. After the deal, CERVANTES drove the SUBJECT VEHICLE directly back to 1338 Gonzales Rd SW. The NMSP UCA reported that CERVANTES sold them 771 grams of suspected fentanyl pills, which were bundled in a plastic saran wrap coated with an unknown brown substance. The suspected fentanyl pills were blue in color, circular in shape, and were marked "M/30." The suspected fentanyl pills were presumptively tested by an HSI seized property specialist and the substance tested positive for fentanyl.

15. In March 2024, the NMSP UCA communicated with CERVANTES to conduct a narcotics transaction of suspected fentanyl pills. On March 14, 2024, CERVANTES met with the UCA at an agreed upon location in Albuquerque, New Mexico and sold them approximately 637 grams of suspected fentanyl pills. The suspected fentanyl pills were blue in color, circular in shape, and were marked "M/30." The suspected fentanyl pills were presumptively tested by an

HSI seized property specialist and the substance tested positive for fentanyl. During this deal, CERVANTES again drove the SUBJECT VEHICLE from 1338 Gonzales Rd SW to the deal location. After the deal, CERVANTES drove the SUBJECT VEHICLE to a mechanic shop and then back to 1338 Gonzales Rd SW.

16. In March 2024, the NMSP UCA communicated with CERVANTES to conduct a narcotics transaction of suspected fentanyl pills. On March 29, 2024, CERVANTES met with the UCA at an agreed upon location in Albuquerque, New Mexico and sold them approximately 1244 grams of suspected fentanyl pills. The suspected fentanyl pills were blue in color, circular in shape, and were marked "M/30." The suspected fentanyl pills were presumptively tested by an HSI seized property specialist and the substance tested positive for fentanyl. During this deal, CERVANTES told the NMSP UCA that he was driving a white GMC Yukon. Surveillance units observed the Yukon leave 1338 Gonzales Rd SW and travel to the deal location. Prior to the deal, CERVANTES circled the parking lot in an apparent attempt to detect surveillance. CERVANTES contacted the UCA and changed the deal location. The UCA followed the Yukon to the new deal location, where the narcotics transaction occurred. After the deal, the Yukon departed the area and conducted multiple aggressive turns and u-turns in an apparent attempt from CERVANTES to detect surveillance.

17. In May 2024, an HSI UCA communicated with CERVANTES to conduct a narcotics transaction of suspected fentanyl pills. On May 22, 2024, CERVANTES met with the UCA at an agreed upon location in Albuquerque, New Mexico and sold them approximately 1,050 grams of suspected fentanyl pills. The suspected fentanyl pills were blue in color, circular in shape, and were marked "M/30." The suspected fentanyl pills were presumptively tested by an HSI seized property specialist and the substance tested positive for fentanyl. During this deal,

CERVANTES told the HSI UCA that he was driving a white GMC Yukon. Surveillance units observed CERVANTES arrive at 1338 Gonzales Rd SW in a white 2012 Ford E-250 van bearing the registration of NM 802TWY. CERVANTES entered the residence, exited the residence while carrying a red box, and got in the GMC Yukon. Surveillance units observed the Yukon leave 1338 Gonzales Rd SW and travel to the deal location. After the deal, surveillance units observed the Yukon travel directly back to 1338 Gonzales Rd SW. Your affiant noted that the seized drugs were provided to the UCA in a red Koolaid box.

18. As of May 28, 2024, I know the SUBJECT VEHICLE is still in use by CERVANTES based on pole camera footage. Based on the previous controlled buy, and my training and experience, I know CERVANTES is likely to continue to use the SUBJECT VEHICLE to facilitate the distribution of drugs. In my experience, drug traffickers frequently conduct multiple transactions and rely on other individuals to supply bulk amounts of narcotics for resale. The requested location information will help agents identify other evidence such as stash houses containing narcotics or proceeds of narcotics sales, vehicles used to facilitate drug transactions, and other conspirators such as suppliers and/or buyers. The SUBJECT VEHICLE has been seen on pole camera footage as recently as 11:42 P.M. on June 2, 2024, parked in the driveway at 1338 Gonzales Rd SW, Albuquerque.

19. The tracking device will be a small, battery powered device capable of emitting an electronic or radio signal to a receiver device controlled by law enforcement. The receiver device will decode the signal and provide information about the movement of the tracker on the **SUBJECT VEHICLE**, identifying the travel of CERVANTES. Since CERVANTES is suspected to transport narcotics, particularly in the SUBJECT VEHICLE, a tracking device would permit

agents to determine the location of suspected stash houses, coconspirators, and purchasers of narcotics in furtherance of the investigation into this TCO.

20.     In order to track the movement of the SUBJECT VEHCILE effectively and to decrease the chance of detection, I seek authorization to install a tracking device on the SUBJECT VEHICLE while it is in the District of New Mexico. Agents will attempt to install the tracking device on the SUBJECT VEHICLE while it is parked at a public place, accessible to the general public. However, it is likely that Agents will not be able to inconspicuously install the tracking device in a public place. Because CERVANTES sometimes parks the SUBJECT VEHICLE in driveways and on other private property, it may be necessary to enter onto private property and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device. If Agents are unable to install the tracking device in a public place, I seek authorization to install the tracking device when the vehicle is parked on the curtilage or the driveway of CERVANTES' residence, 1338 Gonzales Rd SW, Albuquerque, NM.

21.     To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours, as installation, repair, replacement, and removal of the tracking device may be less noticeable during nighttime hours. From both physical and electronic surveillance of the neighborhood, I know that there is frequent vehicle and pedestrian traffic on the roads in front of 1338 Gonzales Rd SW. This traffic reduces greatly during the nighttime hours and would lessen the chance of detection.

22.     In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to

exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to Fed. R. Crim. P. 41 and 18 U.S.C. § 3117, that authorizes members of the HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above described investigation, to install a tracking device in or on the SUBJECT VEHICLE within the District of New Mexico within ten days of the issuance of the requested warrant, to maintain, repair and/or replace the tracking device as necessary, and to remove said tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; and to monitor the tracking device, for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Mexico.

24. I FURTHER REQUEST that the warrant authorize law enforcement authorities to install, repair, replace, and remove the tracking device during either daytime or nighttime hours.

25. I FURTHER REQUEST that the warrant authorize law enforcement authorities to install, repair, replace, and remove the tracking device when on public property or while at 1338 Gonzales Rd SW, Albuquerque, NM.

26. I FURTHER REQUEST that the warrant and accompanying affidavit and application in support thereof be sealed until further order of the Court, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of HSI,

federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others.

27. I FURTHER REQUEST that notification of the execution of the warrant be delayed in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3) for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify co-conspirators, and change patterns of behavior.

28. This affidavit was reviewed and approved by AUSA Timothy Trembley.

Respectfully submitted,

Gavin Hayes
Special Agent
Homeland Security Investigations

Telephonically sworn and electronically signed on this 4th day of June 2024.

UNITED STATES MAGISTRATE JUDGE